UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 15-CR-152-5-CJN |
| | : | |
| v. | : | |
| | : | |
| BRIAN BRYANT, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING RECOMMENDATION**

Defendant Brian Bryant was part of a widespread conspiracy in which he and its members defrauded the Internal Revenue Service out of more than $650,000. In March 2018, the Honorable Rosemary Collyer sentenced him to 100 months' imprisonment. In December 2023, while on supervision, Bryant was arrested in Maryland after authorities found illegal drugs, digital scales, and a loaded pistol in his car. The following May, he pleaded guilty to two counts of possession with intent to distribute narcotics and one count of illegal possession of a firearm. As a result of his conduct, the government requests that the Court revoke his supervision and sentence him to 18 months' imprisonment.

**I.    Background**

**A.  *Facts Related to Underlying Conviction***

In affirming Bryant's conviction, the D.C. Circuit described the criminal conduct as follows:

> Several individuals in the District of Columbia acted together to steal millions of dollars from the Federal Treasury. Their method of operation was this. First beg, steal, purchase or borrow other people's identities including, most importantly, their Social Security numbers. Then file false income tax returns seeking refunds in their names. Keep the refund requests relatively small. List on the tax returns the addresses, not of the purported filers, but of one or another co-conspirator. Then, when the refund checks from the Treasury arrive, compromise bank tellers, negotiate the checks, and deposit the proceeds in the conspirators' personal accounts. This multi-

> year conspiracy netted a total of nearly $5 million in tax refunds from the Treasury.
>
> Antonio Cooper, a bus driver and the hub in the wheel in this conspiracy, entered a plea of guilty and testified for the prosecution against others, including his niece, Tarkara Cooper. The jury convicted her and Brian Bryant of theft of public money and conspiracy to defraud the United States. *See* 18 U.S.C. §§ 641, 371. The jury also convicted Bryant of aggravated identity theft. *See* 18 U.S.C. § 1028A. The court sentenced Ms. Cooper to 63 month's imprisonment, 36 months['] supervised release, and ordered her to pay nearly $2 million in restitution. The court sentenced Bryant to 100 month[s'] imprisonment, 36 month[s'] supervised release, and ordered him to pay some $650,000 in restitution….
>
> The evidence showed that Antonio Cooper gathered names, birth dates and Social Security numbers from friends, family members, strangers, and "wherever [he] could." Using this information, he filed more than a thousand fraudulent federal income tax returns seeking refunds. The typical refund check was between $1,000 and $3,000. To receive the refunds from the Treasury, the fraudulent tax returns listed Mr. Cooper's address or the addresses of other participants in his scheme, one of whom was his niece Tarkara Cooper. More than 450 fraudulent tax returns seeking refunds of more than $1,200,000 listed Ms. Cooper's address. When the refund checks arrived she handed them to her uncle, who paid her $50 to $100 per check. He then deposited the checks in his bank account or the accounts of other co-conspirators. Antonio Cooper also sold some of the checks to others, including Bryant.
>
> For his part, Bryant helped Mr. Cooper cash the refund checks and received half of the face value of those checks in exchange. Brianna Turner, a former Bank of America employee, testified that she helped Bryant deposit some of these checks. She said that Bryant expressed a willingness to compensate her in exchange for violating the Bank's rules on third-party deposits. Bryant paid Turner between $300-$600 per check deposited. He controlled dozens of bank accounts into which refund checks were deposited.

*United States v. Cooper*, 949 F.3d 744, 746–47 (D.C. Cir. 2020).

The Circuit also wrote:

> The government presented evidence of multiple bank accounts controlled by Bryant into which dozens of refund checks were deposited. For example, Bryant deposited 26 refund checks totaling more than $115,000 into a Capital One account in his name between May 2011 and July 2012.

*Id.* at 751-52.

> The value of the bank accounts reasonably connected to Bryant's participation in the scheme was at least $528,252.94. And the government presented evidence of checks attributable to co-conspirators' home addresses that were not attributed to particular bank accounts. The value of such checks was well over a million dollars, and at least some are reasonably connected to Bryant's role in the fraud.

*Id.* at 752.

### B. *Supervised Release Violation*

After completing his 100-month prison sentence for the above conduct, Bryant began serving a three-year supervised release term. Unfortunately, despite the 100-month prison sentence, as well as a prior conviction for carrying a pistol with a license, Bryant was not deterred from engaging in additional crime. On the contrary, on December 15, 2023, members of the Charles County Sheriff's Office searched his SUV and recovered two boxes of opened sandwich bags, two working digital scales, a razor with white residue, a loaded Smith and Wesson pistol with a laser, and four tied bags containing narcotics, the street value of which the officers estimated to be more than $18,000. Bryant was indicted in Maryland state court on January 5, 2024. Five months later, he pled guilty to three separate criminal offenses – two counts of possession with intent to distribute narcotics and one count of illegal possession of a firearm.

## II.    Sentencing Guidelines

Because Bryant committed Grade A violations and was in Criminal History Category II when he was sentenced by Judge Collyer, his recommended guidelines range is 15 to 21 months. *See* USSG § 7B1.4(a). Moreover, given the nature of the violations, revocation of his supervised release is mandatory. *See* 18 U.S.C. § 3583(g)(1)-(2).

### III.     Recommended Sentence

In considering what sentence to impose, the Court should consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4), (a)(5), (a)(6), and (a)(7). *See* 18 U.S.C. § 3583(e). A consideration of those factors warrants an 18-month prison sentence.

The defendant's history includes felony convictions in three separate courthouses. He was convicted of CPWL in D.C. Superior Court. PSR ¶ 65. While on supervision for that offense, he engaged in the above conspiracy, which ultimately resulted in a jury convicting him of Conspiracy to Commit Theft of Government Funds, in violation of 18 U.S.C. § 371, Theft of Public Money, in violation of 18 U.S.C. § 641, and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. After completing the 100-month prison sentence that Judge Collyer imposed, he violated the terms of his supervision by possessing a loaded firearm and drugs with the intent to sell them, which resulted in yet another conviction, this time in a Maryland state courthouse.

Considering all of factors noted above, an 18-month prison sentence is warranted. Such a sentence would properly reflect his history and hopefully deter him at long last from engaging in criminal conduct—the most recent of which involved simultaneously possessing a loaded firearm and illegal drugs with the intent to sell the latter. Such a sentence also would protect the public from further crimes of the defendant and account for the sentences available and the sentencing range set forth in the Guidelines.

### **CONCLUSION**

The Court should revoke the defendant's supervised release and sentence him to 18 months' incarceration.

        Respectfully submitted,

        JEANINE F. PIRRO
        United States Attorney

By:   /s/ *Kondi J. Kleinman*
        KONDI J. KLEINMAN
        Cal. Bar No. 241277
        Assistant United States Attorney
        Fraud, Public Corruption & Civil Rights Section
        601 D Street, N.W. | Washington, D.C. 20530
        (202) 252-6887 | Kondi.Kleinman2@usdoj.gov